Can you move the microphone just a little closer to you here? Sure. I'll step over here. Is that better? That's great. Thank you. I want to start off by – I almost decided to submit on my briefs, but I want to start off by telling a short story that I think illustrates the whole point to my – to the appeal for Mr. Beltran. Several years back, my wife and I took a trip to Puerto Vallarta, and we flew out of the airport in Tijuana, Mexico. And when we arrived back in Tijuana, we were picked up by some friends, and we proceeded to carouse around Tijuana for a long period of time and buy a bunch of gifts. A tour. You were touring. Correct. Correct. And buy a bunch of gifts and presents and things of this nature. And later on, at the end of the day, we arrived at the border. And the officer at the border looked inside, and he asked everybody their citizenship, and everybody answered U.S. The next question was asked was – and I'm ambiguous here, but he looked at the driver and said, how long were you in Mexico? And the driver said, just for the day. And he said, well, what do you have to declare? And he said, nothing. So the agent asked to open the trunk, and he opened the trunk, and he sees, you know, two big pieces of luggage and several, like, 20 or 30 presents all wrapped up. That triggers a secondary inspection. And all kinds of questions about false statements and saying false things to immigration officers and customs officers and things of this nature. The thing that happened there is similar to what happened here. When Mr. Beltran pulls up to the inspection point, he's asked, how much money are you carrying? And he says $7,000. Then they go to a secondary inspection area. It's unclear from the question whether they're asking Mr. Beltran individually or collectively how much money is in the car. Just like in my example, it was unclear whether they were asking the driver individually or collectively, what do you have to declare, how long were you in Mexico? So Mr. Beltran gets to the secondary inspection area, and according to the facts, they start counting the money, and they find $8,177 on him. And Mr. Beltran then says, oh, by the way, there's $4,000 in a diaper bag that my wife has. Well, the evidence of trial indicates that the only people who are given forms to fill out are people who say they have more than $10,000. If at that point in time the inspector would have said, oh, Mr. Beltran, you have more than $10,000 on you, you've got to fill out a form. We wouldn't be here today, or at least I wouldn't. You probably would. So I think the convictions for bulk cash smuggling and for the failure to report, it seems obvious they came out of the confusion and ambiguities of the questions rather than any intent of Mr. Beltran to falsify his statement. But I want to get to the main point first, the materiality of the statement that he had $8,177 and he had $7,000 on him rather than $8,177, which he actually had. The indictment is very specific. The indictment doesn't say Mr. Beltran said he only had 7 grand when he really had over 10. Because the threshold on this thing of whether or not you have to fill out a form is the $10,000, not, you know, anything less. If the indictment would have said, as I indicated, Mr. Beltran lied about having more than 10 grand on him, that would have probably been a material statement. But when Mr. Beltran, when the indictment says he only has 7 — he has $8,177 rather than $7,000, it's not material. Can you imagine if we would be here if Mr. Beltran, how much money do you have on you? $20. They count and he has 50. Can you imagine an indictment that would say that? It wouldn't happen. So — or Mr. Beltran, where are you coming from? Oh, I'm coming from Los Angeles. How is the weather up there? It was raining this morning. And then the agent calls up and finds out it was sunny. I mean, you have to have some kind of materiality in order to establish a perjurous statement, and that just doesn't exist here. The rest of the — I'll be brief and save it for anything else for rebuttal, but I think the critical point here is that the statement that Mr. Beltran made to the customs officer was not perjurous, was not a false statement, because it's not material. And what the agents would have done in any case, whether he said I have $7,000 or I have $8,177, is to verify the count. And that's what they did. So the statements of Mr. Beltran were not calculated to deceive or to mislead or anything at all like that. They were just, you know, apparently an innocent mistake, or even if not an innocent mistake, not material to the investigation. I do have one question. Sure. I don't know about my colleagues. Were the inspectors under any obligation to offer your client the forms? I mean, you suggest that if they were being good guys, they probably should have. But is there any legal obligation on their part at the point where these conversations occurred to say, and now, Mr. Beltran, you need to fill out these forms? Well, I think, you know, I think if you arrive at the checkpoint and they say, how much money do you have on you, and you say over $10,000, you know, say I have $15,000, well, you have to fill out a form. Don't you see the sign up there? You've got to fill out a form. Well, in this case here, when the inspector finds out that collectively they have over $10,000, it triggers an obligation on their part to say, maybe you misunderstood the reporting requirements. Because it's vague. At the trial, the testimony was confusing as to, and I think the agent admitted under the cross-examination of a family is collectively carrying over $10,000 on them. They may not be required to fill out a form. So I think, yeah, I think they do have an obligation to tell them, you've got to fill out the form. You must have been confused. Is it clear that the reporting requirement is individual? It is not clear, at least according to the testimony that I saw at trial. You know, and I think the signs, according to the trial testimony, say if you are carrying. So you, does it mean you as an individual or you collectively? It's very ambiguous. This is the example I gave to you at the start of the – at the start of my argument. It's ambiguous as to what the word you means, if it means you collectively or you as an individual. And I think because of these ambiguities, the – it should be resolved in favor of the appellant, not in favor of the government. Okay. You want to – I'm sorry. Is there a sign in English and in Spanish, both, or just in English? I don't know what the evidence showed at trial. My experience with it, there's signs in English and in Spanish. The word you in English, of course, would be singular or plural. Do you know what the Spanish usage in this case is? No, I don't. Because then it might be ustedes. Yeah. It might be different. It might be different. But there's no evidence of that in the record. But I think – and then the example I think the government gave as to other cases, you know, I think I pointed out in my reply brief that, you know, this is a, you know, a husband and wife situation. It's a lot different than, you know, a bunch of, you know, buddies getting down there together and, you know, and gathering up, you know, money so they each have less – everybody has less than $10,000. This is a family. Okay. You want to save some time for rebuttal? Sure. Thank you for your argument. Thank you. We'll hear from the government at this time. Mr. Jacobson. You're not going to be nervous now that your boss is in the audience, are you? Or my mother, yeah. Oh, even worse. Please, the Court, good morning. Jeffrey Jacobson on behalf of the United States. I suspect your boss could answer the question about the plural of you. But go ahead. I want to answer Judge Clifton's question first. There is a sign in both English and in Spanish, and it's cited actually in the record at tab F on page 38, and I'd like to read it for the Court because I think it clears off some of these questions. The sign says directly, notice, every person who transports or causes to be transported more than $10,000 in currency, monetary instruments into or out of the United States must file a report with U.S. Customs. Ask the officer for a reporting form, and then it gives the citation. And that sign is in both English and Spanish. And in what Mr. Bitter's story, where's that in the record? That is tab F of the excerpt of record at page 38. Okay. What Mr. Bitter's story fails to acknowledge is that the inspector, Inspector Baer in this case, actually informed the members or the people that were in the car of the reporting requirements. He not only directed the people to the sign, but he said it is not illegal to transport more than $10,000 in currency out of the United States, but to do so, you must fill out a form. And then he asked each and every person in the car, including the defendant, whether or not they understood the law. And he got a verbal declaration that he did understand the law. And then he asked each and every person, do you have any money? Are you causing $10,000 to be transported? And the defendant said, I have $7,000. That turned out to be a false statement, because when I asked them. Is the testimony in the record that he asked them, are you causing? No, he did not. Okay. The testimony is that, I think he said, are you carrying $10,000. Right. So then we're back to the, are you, you know what I'm saying, is we're back to this literal problem, whether in English or Spanish, are you carrying? And the truthful answer for Mr. Beltran was no, correct? Because he was not carrying. He might be caused to be carrying, but he was not carrying. Well, but what he said was not what he was carrying. He said $7,000, and he was carrying $8,177. If he had said, I'm carrying $8,100, would that have been a false statement? Now we have a difference, because remember the testimony is. Can you answer the question, start by answering the question, if he had said, I have $8,100, would that have been a false statement, material false statement? No. If he said, I have $8,000. Maybe. And I say maybe because there is, it could be material at $50. It could be material at $5. Because the test is whether or not it has a natural tendency, a probability to cause or influence the agency's decision-making process. So there are times where it could be material. But why would it be material? Possibly. Why would it be material if you have a floor of $10,000? Why does it matter if you're carrying 6, 7, 8, or 9,000? Well, it's material if it influences or has a tendency to influence. Remember, it's the likelihood or tendency to influence. What if he had said, I have less than $10,000. Excuse me. Let me finish my question. I have less than $10,000 on my person. And how much exactly I have is none of your business. I apologize, Your Honor. I thought you were done with your question. This very situation came up in the Carrier case, which is cited in the appellant's brief, where it was a no response to that question. And the Court, this Court in Carrier, said that it is material because it would affect the agency's decision-making process, the exercise of the agency's functions. And that is to provide the currency reporting form. Because if he says no, he is implicitly asking the customs inspectors to ignore him, to let him pass through. Because once he says, I have $15,000 or I have $10,000.01, they have to fill out that form. So by saying no or an amount under $10,000, they're influencing that agency's decision-making process. But you see, now we'll go back to our facts. He doesn't say no or I have under $10,000. He says I have $7,000. How would that influence the agency? Because $7,000.00 got him kicked to secondary. They didn't even need $8,100.00. So $7,000.00 got him kicked to secondary because it's a lot of money to haul around in your pocket. So what's the difference between $7,000.00 and $8,100.00 for purposes of this statute if they're both under $10,000.00 and $7,000.00 gets you kicked to secondary? Well, the difference is, again, and this question was squarely before the jury. This argument was before the jury. And the jury could not have convicted him if they didn't find that he had he lacked the men's right to commit this crime. So materiality is only a piece of this, a piece of this crime. But the minute when he gets into secondary and they count the money and they find that it's $8,177.00 in front of him, the defendant says, well, I have $4,000.00. You know, there's $4,000.00 more. He didn't say, I have $4,000.00. Right. There's $4,000.00 more in the bag. But he did have $4,000.00. He volunteered that, didn't he? Yes. And then at that time took responsibility for all the money and repeatedly took responsibility for all the money and then later admitted that he had split up the money before they left California just so that he wouldn't have more than $10,000.00 on his purse. Doesn't that fact suggest that he didn't knowingly or willfully try to avoid the question? I mean, he was trying to avoid the question but didn't falsely answer the question because he thought by giving her $4,000.00, I've only got, what, $8,117.00 or something like that. I've only got $8,000.00 in sum. And so I'm okay. I've got under $10,000.00. Doesn't that by itself suggest that he doesn't trip on the knowing or willful part? And this question is exactly what the jury pondered. And there is great deference that is offered to the jury's verdict in this case. And the jury found that he did, in fact, have that willful knowing intent to evade the currency report requirement and then willfully failed to file the report. And this question was raised on a Rule 29 motion at the close of the government's court, rejected by the district court, and then raised again in a Rule 29C motion post-verdict and again rejected by the district court because this question was exactly what the defendant argued. And I can say that the jury could not or should not have convicted him if they didn't find he had the mens re to make that materially false statement. There are no other questions on this subject. Would the panel like to hear anything on the lesser included issue or on the issue of the jury instructions? I don't see any interest in either one of those. Thank you for your argument. Rebuttal? Thank you, Your Honor. You can tell Mom you did a good job. And your boss. The key thing here is materiality. And had the indictment charged, in essence, he said he only had $7,000, but he really had it over 10, it might have made a difference. But the difference between the 7 and the 8177 is not material in terms of what the government will do. In either case, the government will verify the count or pull him to a secondary inspection area. If they ask him how much money he had on him he's coming up, he doesn't know what the agent's trigger point is. That's true. So he may be thinking a lower number in hopes that, you know, let's move it down a little bit, maybe it's less likely they'll pick me. Well, that's true. But if he just said I have $9,999, you know, that might have triggered it. If he just said, you know, screw you guys, I don't have to tell you anything, that might have triggered it. Okay. So in all these the key point here is materiality in terms of whether or not you convict someone of making a material false statement. Not just whether or not the statement is false, but whether or not it's material. If I, as an attorney, you know, in a motion, do a declaration under penalty of perjury and I sign it, the foregoing is true and correct based on our penalty of perjury, signed Richard H. Bitter's attorney since 1977, and someone looks it up and says, you've been an attorney since 1976, is the statement I made material to as to whether or not it's true based on your effect in the decision. And here it clearly isn't. And the government didn't demonstrate that at trial. And because it didn't demonstrate that at trial, the jury basically had the wrong impression of what perjury was. Why else might he give a number that's lower than what he's actually holding, not by $17 or $77, but by over $1,000? Well, inadvertence. I think I addressed that in the brief. He thought some of the money he was holding for someone named Beto and along those lines. So when they say how much money are you carrying, it's an ambiguous question. Were we to determine that a rational jury could find that there had been a willful failure to report, but there was a discrepancy as a matter of law in the materiality, would it make any practical difference to your client? I understand he's on two years probation. I'm not sure. The immigration consequences of making a false statement would be moral turpitude and might cause deportation or denial of naturalization and other things. So the materiality thing was the main focus of our appeal and the false statement. But I think the other convictions, too, shouldn't stand because of the ambiguity of the reporting requirements and the knowledge of whether or not somebody has to, if it was collectively or individually. I think the signs clearly indicate, and if you are carrying, it doesn't mean you as an individual, it should mean you as an individual. Okay. Thank you for your argument. I thank both sides for their arguments. The case just argued will be submitted for decision and the Court will stand adjourned. All rise. The Court will stand adjourned.
judges: Hawkins, McKeown, Clifton